# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **K.R., B.R., and J.M.**

**No. 16-0611** (Mingo County 16-JA-4, 16-JA-5, & 16-JA-6)

**FILED**

**February 21, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother P.M., by counsel Jane Moran, appeals the Circuit Court of Mingo County's April 20, 2016, order terminating her parental rights to two-year-old B.R., five-year-old K.R., and fifteen-year-old J.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S. L. Evans, filed its response in support of the circuit court's order. The guardian ad litem, Susan J. Van Zant, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the DHHR filed an abuse and neglect petition alleging that K.R.'s biological father touched her between the legs.[2] K.R. later disclosed the sexual abuse to a DHHR worker. According to the petition, the investigating DHHR worker noted that petitioner had a black eye. Petitioner initially reported to the DHHR that she had gotten into a fight with an unidentified woman, that the woman's husband held her down, and that the couple physically assaulted her in front of the children. Petitioner later told a DHHR worker that, about a month prior to the start of the investigation, "everyone [petitioner, I.M., K.M., and K.M.'s wife] was fighting each other and the kids were present at that time also." The petition also alleged that, on January 6, 2016, petitioner reported to her probation officer, who stated that petitioner appeared

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]At the time, K.R. lived in a home with petitioner, K.M., K.R.'s father, and petitioner's boyfriend, I.M., among other adult individuals. K.M. is K.R.'s biological father.

to be under the influence of "something" when she arrived at his office.[3] According to the petition, the probation officer stated that petitioner admitted to taking a "nerve pill" prior to reporting to his office but was unable to produce a prescription for any medication. Petitioner was drug tested and tested positive for drugs. The following day, petitioner called the Mingo County home confinement office and reported to her probation officer that she was driving to the Child Advocacy Center ("CAC") for K.R.'s forensic interview. Because petitioner sounded intoxicated, the probation officer contacted the West Virginia State Police and the DHHR. The probation officer, a DHHR worker, and a West Virginia State trooper confronted petitioner at the CAC office. The trio observed that petitioner appeared intoxicated and K.R. was unrestrained in the vehicle. Following a field sobriety test, petitioner was arrested and charged with child neglect and driving while under the influence of drugs or alcohol. The petition further alleged that K.R. had a lice infestation. The DHHR took emergency custody of the children following petitioner's arrest.

In January of 2016, following the children's removal from petitioner's home, the circuit court held a preliminary hearing and heard the testimony of a DHHR worker familiar with petitioner and the children. The worker testified that K.R disclosed sexual abuse in her CAC forensic interview and was referred to therapy. The worker also testified that petitioner was informed of previous abuse allegations against K.R.'s father and also of the substantiation of sexual abuse by K.R.'s father against his other biological children in 2011. According to the worker, petitioner was aware of the risk of harm to the children but permitted K.R.'s father to remain in the home with the children. The worker further testified that there was a previous abuse and neglect petition filed against petitioner for driving while under the influence of drugs or alcohol with K.R. in the car. According to the worker, petitioner received services and the prior case was closed. A DHHR supervisor testified that petitioner stated that she had not sought a protective order against K.R.'s father and that petitioner did not believe that K.R.'s father abused her. The supervisor also testified that petitioner knew that K.R.'s father was not supposed to be around K.R. or any other children but that petitioner allowed him to live in her home with the children. Petitioner's probation officer testified that petitioner's probation was revoked because she tested positive for Benzodiazepines and barbiturates.

At the close of the evidence, the circuit court found that there was domestic violence in the home, that petitioner was aware of prior sexual abuse allegations against K.R.'s father, and that petitioner failed to protect the children from harm. The circuit court found that circumstances at the time the petition was filed constituted abuse and neglect and probable cause to remove the children from petitioner's custody.

On February 10, 2016, petitioner pled guilty to gross child neglect creating a substantial risk of injury or death. She was sentenced to a term of incarceration of one to five years and has been incarcerated since her guilty plea and sentencing. That same month, the circuit court held an adjudicatory hearing. Although petitioner was incarcerated, she appeared in person and by counsel. Petitioner did not present any additional evidence at the adjudicatory hearing. The circuit court found, by clear and convincing evidence, that the children were abused and neglected and that petitioner failed to protect them. Petitioner orally moved the circuit court for a

_____

[3]Petitioner was on probation for a 2014 child neglect conviction.

post-adjudicatory improvement period, to which the DHHR objected. Petitioner also moved for visitation, to which the guardian objected. The circuit court denied petitioner's motions based on her incarceration and its concerns that visitation in a prison setting might be harmful to the children.

In March of 2016, the circuit court held a dispositional hearing. The circuit court heard the testimony of a DHHR worker who recommended the termination of petitioner's parental rights. The worker testified that the DHHR's recommendation was based on petitioner's failure to protect the children from sexual abuse and driving with K.R. in the vehicle while under the influence of drugs or alcohol. The worker also testified that petitioner was currently incarcerated on a second criminal child neglect conviction, previously received services, and that her current incarceration prevented the DHHR from providing additional services. Following the close of the evidence, the circuit court found that petitioner was presently unwilling or unable to correct the conditions that led to the petition's filing, that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was in the children's best interests. The circuit court terminated petitioner's parental rights by order entered on April 20, 2016. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

To begin, inasmuch as petitioner argues that she was denied services without justification, we disagree. She contends that she is entitled to access all of the rehabilitative services available to others in her situation. According to the record on appeal, petitioner was provided with services. The circuit court also ordered that petitioner undergo a psychological evaluation to determine what reunification services would be appropriate. However, due to petitioner's incarceration, the DHHR determined that she could not participate in services beyond the evaluation while incarcerated. Thus, petitioner was not denied services; rather she was provided with the services available to her while incarcerated.

Petitioner further argues that she was denied various procedural protections because the circuit court denied her motion for an improvement period. We have held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (stating that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, it is clear from the record that petitioner failed to demonstrate her ability to fully participate in an improvement period. The circuit court was presented with evidence that petitioner failed to correct the conditions that led to the filing of the second abuse and neglect petition. Indeed, petitioner was aware that K.R.'s father sexually abused his other biological children and yet she allowed him to live in the same home as the children. Petitioner stated that she did not believe that K.R.'s father sexually abused her despite the substantiation of sexual abuse to the contrary. "Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As such, it is clear that petitioner failed to establish that she was likely to fully participate in a post-adjudicatory improvement period.

Petitioner also argues that the circuit court erroneously terminated her parental rights based solely on her incarceration at the time of the dispositional hearing. This is not the case. Beyond her incarceration, the circuit court based termination upon petitioner's extensive history of endangering the children, incarceration, and substance abuse. Pursuant to West Virginia Code § 49-4-604(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. at 89, 479 S.E.2d at 600 (1996). Further, we have explained that incarceration may support the termination of parental rights based on the analysis of a series of factors. *See In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (holding that "[a]lthough we have not adopted a *per se* rule regarding the impact incarceration has on a termination of parental rights decision, we have likewise not said that the facts surrounding a parent's incarceration may never form the basis for terminating parental rights."). With regard to incarceration, we have held that

4

[w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Id*. at 91, 717 S.E.2d at 875, Syl. Pt. 3.

In the present case, the circuit court was free to consider petitioner's incarceration as a basis for the termination of petitioner's parental rights. The circuit court based its ruling on petitioner's incarceration and additional factors. In this case, prior to her termination, petitioner took no steps to protect her children from K.R.'s sexually abusive father and allowed him to live in the same home as the children. Petitioner also had a long history of substance abuse and child endangerment, none of which had been remedied since the filing of the previous petition. Notably, petitioner was previously arrested and charged with driving while under the influence of drugs or alcohol with a child in the vehicle. She was placed on probation and the DHHR opened an abuse and neglect case and provided her with services. Given the circumstances presented, there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future. Furthermore, the children require stability and permanency. Thus, as the circuit court also found, termination of her parental rights was necessary for the children's well-being. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings. For these reasons, we find no error in the circuit court's order terminating petitioner's parental rights.

For the foregoing reasons, we hereby affirm the circuit court's April 20, 2016, order.

Affirmed.

**ISSUED**: February 21, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker